Case 15-5105, Karen Roof v. Bel Brands USA, Inc. et al. Oral argument not to exceed 15 minutes per side. Brian Abell for the appellant. Your Honor, thank you for the opportunity to be here today. Brian Abell from Adams-Sabor & Welsh, Louisville, Kentucky. We respectfully request one minute rebuttal time. Your Honor, this is a great case. This is a great case because this court doesn't have jurisdiction to hear this case because there was no diversity of citizenship and there was no federal question raised. So we go directly to what the law of the land is. We go to 28 U.S.C. Appellees would have this court believe that 1332, 1441, and 1446 control this case. However, there was no diversity of citizenship. Karen Roof is a citizen of the Commonwealth of Kentucky. Hiram Horn is, for now, a citizen of the Commonwealth of Kentucky. He has been sued for promissory estoppel. He has been sued for civil conspiracy and he has been sued for retaliation under KRS 344.280. 344.280 is Kentucky's retaliation statute. Unlike the federal retaliation statute, which will not allow liability to attach to an individual, Kentucky's statute directly allows, by its plain language, a must or two or more. And it's interesting because the way it's written, one or more persons can retaliate. So my question always has been, how could one person retaliate against themselves or conspire to retaliate with only one person? So that's a unique piece of the language in that statute. However, it is clear through the case law that an individual can be held liable under the Kentucky Civil Rights Act, which is unique to any other type of law, especially the federal law. And therefore, the case must be remanded under USC 1447C. It must be remanded because we acted in good faith, because we sued them under causes of action that are viable. And once the discovery process commences, we believe we will be able to produce enough evidence to put in front of a fact-finding jury, which is not a matter of law, and liability will attach to defendant Horn. And therefore, as a threshold matter, this court has no jurisdiction to hear this matter. In fact, the trial court found that there was a fraudulent joinder. A fraudulent joinder is a judicially created doctrine that's found nowhere as in the text, treaties, or laws of the United States of America. It is just interpreted to try to weed out cases where it would remain in the state courts and give us the opportunity to pursue discovery, where in Kentucky the standard for a jury would be whether there was a substantial motivating reason for my client to be discriminated against on the basis of her age and her gender as a female. The federal court's standard is the but for. Was she discriminated because of her sex? Was she discriminated against because of her gender? That is the reason why we need to bring this back to the Commonwealth of Kentucky to pursue an action in the Grayson County Circuit Court, Your Honor. As a threshold matter, this court cannot hear jurisdiction. And therefore, we would ask that the case be remanded under the laws of the United States of America because this court cannot hear the matters involved, the substantive matters. So which are the Kentucky cases that you're relying on for the? For the retaliation, Your Honor, I'm sorry? Yeah. It would be the Oldham County versus Fiscal Court, I believe. What county? Oldham County. Oldham County Fiscal Court. It's just a colloquially named title of that case. Morris versus Oldham County Fiscal Court, Your Honor. And that clearly establishes that a person can be liable under the Kentucky civil rights statutes, KRS 344.280. And how did the district court respond to that? The district court used the fraudulent enjoinder standard, stating that there was no plausible way that liability could be established to defendant Horne, to non-diverse defendant Horne, because they stated that the elements of promissory estoppel couldn't all be met. However, that's a factual question for a jury. I'm sorry. Yes, ma'am. Which counts did you plead against Horne? I pled KRS 344.280, retaliation, which goes along with KRS 344.040, which is no employer must discriminate on the basis of age, race, gender, sex. It's the Kentucky Civil Rights Act. However, you go further down, KRS 344.280 specifically addresses an individual may be held liable for retaliation or conspiring to retaliate. We also sued him under civil conspiracy, which it's murky. The Supreme Court of Kentucky has not ruled on that. In the federal courts, they're using a standard called the inter-corporate conspiracy doctrine. I've raised arguments of whether we could sue a corporation under piercing theories or under some type of corporate mens rea theories, such as criminal law, where liability can be attached for criminal misconduct of agents of a company. Okay, but I want to get back to the individual liability for retaliation. Yes, ma'am. All right, so you pled that specifically against the individual. I did. And how did the court respond to your argument that the individual can be liable under section 280? Well, they acknowledged that it is there. However, they stated that based on the complaint, that just an overview of the facts of the complaint, that the court didn't feel as if liability would be able to be established, stating that, in essence, piercing the pleadings, making a factual determination instead of a lawful determination, that Horn would not be found liable for that. And that's how the court responded, Your Honor. And do you want to respond in the alternative or do you want to address in the alternative if the court concluded that it was proper not to remand? If the court were to support the fraudulent joiner ruling, the judge went ahead and ruled on the merits. On the merits. And did you want to address that? Well, the merits of the case for that would have been by using the fraudulent joiner standard, stating that they didn't feel there was a colorful basis for liability to attach to non-diverse Horn. Using that standard, the judge may pierce the pleadings, do a summary inquiry, and look at that. And my complaints of the actual complaint were two, three, or four pages. We spelled out exactly what had happened. The court was not persuaded by the facts of the case that specific instances happens. For example, Karen Roof had a conflict with an individual named Tiffany Overstreet, who, as the facts clearly laid out, was a good or a close working friend of Hiram Horn. That my client engaged in protected activity, which, of course, in the federal courts, protected activity is complaining to anyone. And that case would be the Johnson versus the University of Cincinnati coming year maybe 2005. And that's what that case, and that is a federal court. However, the facts state that my client engaged in protected activity when she raised the issues that she felt she was being mistreated. And that, to go along with that, Tiffany Overstreet was a close working friend. And the facts clearly laid out that non-diverse Horn and Tiffany Overstreet can try to demote my client. That's a fact. That is a fact that is ready for a jury. A court hears matters of law and not a matter of fact. And therefore, we get over that hurdle by stating the facts are the facts are the facts of the case. To pierce the pleadings and look at and make a prediction of what would happen at a trial in Grayson County Circuit Court is clearly erroneous. Further, the court, and this may go back to your questions about the civil conspiracy, the court specifically stated that or specifically acknowledged that the Supreme Court of the Commonwealth of Kentucky has not yet been confronted with the civil conspiracy and the inter-corporate conspiracy doctrine. Now, what that means is that is an unsettled and gray area of the law. That is properly left to the states. That is properly left to the Supreme Court of the Commonwealth of Kentucky. And therefore, that was clearly erroneous to make a prediction of what the Kentucky Supreme Court would do. And to go along with that, by looking at what the Kentucky legislature, the lawmakers, have specifically stated by the plain language and plain English, one or more persons can be held liable for conspiracy to violate any portion of this chapter. KRS 344.040, no employer must discriminate on the basis of age, race, gender, sex, all the basic elements of the Kentucky Human Rights Act. There are some that are not there that are pending in the House bills. We haven't added those yet. I'm getting feedback. I'm losing arguments on that. But that's not this case. This case is age and sex. My client had been running the plant for some time. They bought, and we believe we've been denied the opportunity for any discovery because we've been tossed out of court on the 12b6 motion, a procedural device to get around the factual issues to keep it from a jury. We've been kicked out of court. So I cannot produce here, I can't stand here with e-mails stating Karen Ruth is in charge of SAP. SAP is a software for documenting inventory. You hold the device, you scan things, you run things. It keeps the operation smoothly. They paid, we believe, $15,000 to $17,000 to have a license in her name. As I stand here today, we believe the license is still in her name. However, she has been constructively demoted to driving forklifts again. However, she had made it up to the top tier, started complaining. Next thing you know, she's back on the forklift where she started eight years ago, ten years ago. The judge dismissed this case on the pleadings. Correct. Once you get beyond the fraudulent joiner, he said you haven't pled a cause of action for sex or age discrimination, right? He stated that we could make out a couple of the elements. However, he stated the third element is fatal because the court predicts they can't carry their burden. To make a prediction at that early of a stage without the discovery, for example, subpoenaing the e-mails to find out exactly what type of control she would have, if I could produce that, can I get a jury question of that? And that is a factual issue for a fair-minded jury to decide. As a threshold matter, the courts rule on what the law is. If we go back to exactly what the law is, we would go back to Morris v. Oldham County Fiscal Court, where the court stated, we read by the plain statute that an individual can be held liable for retaliation under the statute. Now, we have to connect it to 040, the actual discrimination. In your complaint, did you plead a cause of action? And I made it specifically in detail, long facts, because that's what we have to do now. Our complaints are getting massive. We're going from 50-paragraph complaints. Everything I file now is not under 200 paragraphs because of what we're running into. So every fact that we find that we can put in there are going in there. They're getting bigger and bigger with attachment A, attachment B, whatever we can produce, timelines of events and things like that. It is making the plaintiff feel as if the plaintiff has done something wrong for addressing the court of grievances that they feel they've been discriminated against on the basis of their age and the basis of their gender. And as a threshold matter, the jury determines matters of fact and not matters of the law. We've pled 60, 100 paragraphs of complaints about what had happened. Through motion practice and motion papers, I've had to condense that and put it into its logical flow. In 2003, this happened. In 2006, this happened. In 2008, that happened. My client started engaging in protected activity. Engaging in protected activity is complaining to anyone. She complained to non-divorced horn that she wasn't getting her promotions. She had an interpersonal conflict. The judge really harpered on that. Is this a personal conflict issue or not? However, the pleadings, the plaques and the pleadings, clearly established that the person she had a personal conflict with was a close working friend. It goes on to state that non-divorced horn was very angry that they had the personal conflict. Typically, over street quit, he was even angry about that. He began retaliating against her by writing her up for minor infractions. One of those was dumping wax down a drain. Just talking to my client again, I have no discovery. What did these interpersonal conflicts have to do with her allegations of age and sex discrimination? Well, they didn't have anything to do with them. They had to do with her putting in for a promotion, which she thought that she was entitled to. Apparently, this other woman thought that she was entitled to it as well. Well, what did that have to do with her discrimination claims? Her putting in for a promotion? The fact that she put in for a promotion and didn't get it. Perhaps, seemingly, the basis for that was that she was having conflicts with co-workers and management. Where's the basis for the discrimination claims in here? Or even as to the conspiracy claim, the underlying violation that would support the conspiracy claim. You're trying to stay in court, so you have to plead a basis for these age and sex discrimination claims, the retaliation and conspiracy. How did you do that? It seems like most of what you've pled have to do with interpersonal conflict between people. The interpersonal conflict comes at a later time. If you read the beginning of the fact pattern, she was ostensibly running the operation. She was in control. She was in control for a period of time until they brought in non-diverse horn. He began eliminating the workforce. Now, there is some case law stating that eliminating the workforce, can you do it in a temporal proximity and make that jump? We go to the McDonnell-Douglas burden shifting, issue protected category, adverse employment action, things like that. The adverse employment action would be her being there, her being stripped of that, two males coming in instead of her. When they expressly stated to her, you're going to be right up here with us one day if you become an expert in this. She did become an expert in that. She began training all the males all the time. They come to her. Hey, Karen, can you train them? They were calling at her home. Can you train them? You're going to be right up here with us. Lo and behold, they hired two males from outside the company. They come in. One male, Ron Inman, specifically stated to my client, and it's in the facts. The facts at this stage are deemed 100% true. Stated to her, why aren't you doing this job? You already know everything. That is a male coming in there from outside the company after they already stated to her. You're going to be right up here with us, and we will actually have you here by December 2012, I believe the facts state. All right. Why don't we hear from your opposing counsel? You'll have your rebuttal time. Yes, sir. Thank you so much. May it please the court, my name is Richard McArdle. I represent the appellees Hiram Horn and Bell Brands USA. I'd like to start by telling the court what this case is not about and then what it is about. This case, it's not a termination case. Ms. Roof still works for us today. It's not a demotion case. She was not demoted. What this case is about is that Karen Roof and another co-worker, Tiffany Overstreet, had an interpersonal conflict. The supervisor, Hiram Horn, got fed up with it and said, now neither one of you is going to get the coordinator position. As a result of that, Tiffany Overstreet quit. Karen Roof filed a six-count complaint. That complaint alleges age discrimination, gender discrimination, and retaliation under the Kentucky Civil Rights Act, as well as civil conspiracy, promissory estoppel, and negligent hire and negligent retention. Four of those six claims are against both defendants, the three statutory claims and the conspiracy claim. Every one of Ms. Roof's arguments can fall into one of the five following categories. One, they are contrary to settled law. Two, the Sixth Circuit earlier this year in a case involving Ms. Roof's counsel and me and my client, Bell Brands, already rejected some of the very same arguments that are being advanced in this case. Arguments such as the U.S. Supreme Court's decisions in Twombly and Iqbal are unconstitutional. Arguments such as Bell Brands' voluntary early retirement program is evidence of age discrimination. The court earlier this year rejected both of those out of hand and in fact labeled them curious, yet they continue to be made. Another category is many of the arguments Ms. Roof is advancing are unsupported by any authority. At the lower court, Ms. Roof advanced an argument that she made up out of whole cloth called constitutional estoppel, even set forth the elements of constitutional estoppel, and we are forced to respond to that, and then used the argument of constitutional estoppel to advise the district court that it's high time to prevent life-tenured judges from circumventing the covenants in our Constitution which are fundamental to free people. Another category where all these arguments fall into is Ms. Roof just ignores authority that we've cited, authority cited by the district court, doesn't even address some of the authority we've cited, and I'll talk to that in a minute. And fifth, Ms. Roof raises new arguments on appeal that were never raised at the court below, including arguments in the reply brief and new authorities in the reply brief. So if I can try to clarify our position, the claims against Hiram Horne were dismissed on a basis of fraudulent joinder. The court found there was no reasonable basis to predict that Hiram Horne would be liable for age or gender discrimination under the Kentucky Civil Rights Act. The answer to that is easy. There is no individual liability under the Kentucky Civil Rights Act for age or gender discrimination. And let me also clarify, there can be individual liability for retaliation under the Kentucky Civil Rights Act, so that's not a mystery. But what the court held was, based upon the allegations pled in the complaint, that Ms. Roof could not establish a reasonable basis that Mr. Horne could be individually liable for retaliation. Now, why did the court do that? For retaliation in the employment context, you need three things. The plaintiff has to engage in statutorily protected conduct. Not everything that makes employees angry in the workplace is statutorily protected conduct. Complaining about a personality dispute, a communication issue, is not statutorily protected conduct. Statutorily protected conduct is complaining about unlawful discrimination or complaining about unlawful harassment. It's not complaining about common day, everyday workplace gripes. And clearly, if you read the complaint, the complaint, in an exhaustive fashion, details the personality conflict between Ms. Roof and Ms. Overstreet. And that's what Ms. Roof complained about. Was he the one that told her that she's already getting paid too much, or was that someone else? I think that is someone else. I don't think that was Hiram Horne. I'd have to check the complaint, Your Honor, but I think that was someone else. So, right away, to establish the retaliation claim, after you establish statutory protected conduct, you have to establish causation, that it was the conduct that caused her to not get the coordinator position. And if you turn to paragraph 67 in the complaint, and no need to turn to it, actually, I'll just read it, you'll see that Ms. Roof pleads herself right out of a retaliation claim. Paragraph 67 says that defendant Horne disqualified plaintiff from getting a coordinator position because of Tiffany Overstreet's false accusations. So here, Ms. Roof is conceding. It wasn't even her protected conduct, or anything of her conduct, that caused Mr. Horne to pull back on the coordinator position. It was Tiffany Overstreet's conduct. That's a bit of a reach. Well, that's what the complaint says. And it says what it says, and that's all we have to go on. The other thing you have to understand, I think the court needs to appreciate, is if what Ms. Roof is alleging, that complaining about an interpersonal conflict, is deemed protective conduct under the Kentucky Civil Rights Act, one, she has cited no authority to support that position, but two, that would dramatically broaden the definition of protective conduct under the Kentucky Civil Rights Act, and it would have serious ramifications in Title VII cases because the Kentucky Civil Rights Act closely mirrors Title VII in many respects, and many federal courts turn to Title VII in Title VII cases when interpreting the Kentucky Civil Rights Act. So the court held you didn't plead sufficient facts to establish a plausible claim against Bell Brands for any of those statutory claims, nor did you plead sufficient facts to establish a reasonable basis that Hiram Horne could be liable for any of those statutory claims. Well, those are two different issues. With Horne, it's the retaliation, and there is no statutory liability for the other count. Correct. That's correct, Your Honor. So just because you've established that Horne can't be responsible, I'm not sure you've established that they didn't plead any age or gender discrimination against the company. Thank you for bringing that up. The district court relied on three decisions for establishing that, for holding, excuse me, that Ms. Roof did not plead a plausible claim of age or gender discrimination against Bell Brands. The court relied on the Supreme Court's decisions in Iqbal and Twombly and a case out of the Sixth Circuit that is as close to being on point as it can be, Hahn v. University of Dayton. In Hahn v. University of Dayton, it was an Asian male professor who was terminated who alleged that he was terminated based upon his gender and his race. And the court said, other than concluding that it was your gender and your race, you haven't pled sufficient facts to demonstrate that the employer relied upon or even factored your gender or race into his decision. The exact same applies here. This complaint in great detail goes on about the interpersonal conflict. What about the business about telling her she already makes enough and then having her train all these men? Well, having her train men has nothing to do with whether or not the employer made a decision not to promote her to coordinator based on age or gender. Well, it does in the sense that you generally prove that you were qualified for the job, at least as qualified, and that a man got it. I mean, it does have something to do with it. Well, Your Honor, two things. I would urge the court to closely examine the complaint because what plaintiff alleges that it was the interpersonal conflict that caused her not to get the coordinator position. She doesn't allege, other than in conclusory fashion, that it was her age or gender. She ties no facts to that. But there are facts that she's alleging. She is recounting facts that, at the end of the day, at first she wasn't getting it because these other people were getting it, and then I'm not sure if it was the same position. At the end of the day, this person announces, well, now neither of you can have it without any decision on who was to blame for the conflict. Well, Ms. Ruth blames Tiffany Overstreet. That's why I quoted paragraph 67. She blames Tiffany Overstreet. She never alleges any facts that ties Belle Brand's decision to her age or gender. She just makes a conclusory statement, I happen to be female over 40, and therefore it must have been my age and gender. But there's no facts to support that, and that's exactly what the district court found. I'd like next to address the conspiracy claim. Ms. Ruth brings a conspiracy claim against both Hiram Horne and Belle Brands. The conspiracy claim, if you turn to paragraph 147, as it relates to Hiram Horne, is really a backdoor approach to finding Mr. Horne liable for age and gender discrimination under the Kentucky Civil Rights Act. I'm paraphrasing, but essentially what that paragraph says is that Belle Brands and Mr. Horne conspired to discriminate against Ms. Ruth on the basis of her age and gender. Well, the statute does not allow for individual liability for age and gender discrimination, so Ms. Ruth can't accomplish indirectly what she's prohibited from accomplishing directly. We also relied, and the second reason the argument fails, we also relied on the intra-corporate conspiracy doctrine, which many district courts in Kentucky have recognized. It is not a novel theory. It is not a novel issue. And essentially that doctrine says the employer and its manager are a part of the same collective entity. They are not individual persons in the eyes of the law. They can't conspire together to harm a third party. Nowhere does Ms. Ruth cite that the district court was prohibited in predicting that the Supreme Court of Kentucky would adopt the intra-corporate conspiracy doctrine. The last theory advanced that's still viable is the promissory estoppel theory. Plaintiff's promissory estoppel theory is only against Belle Brands. In the promissory estoppel analysis, the district court correctly focused on the third element, and the third element is material detrimental reliance. Based on the pleadings, based on the facts in the complaint, Ms. Ruth did not plead that she engaged in any material detrimental reliance based upon the alleged promise by Mr. Horn. She does not allege she turned down any opportunity at another company, any opportunity within Belle Brands, that she materially changed her position in any way, shape, or form. The only reasonable inference is she just kept continuing to do her job. Now, Ms. Ruth argues that Belle Brands placed software in her name, and somehow that is evidence of detrimental reliance. But even if that's true, and I don't know that it is, but even if it is, that's Belle Brands' conduct.  And there's nothing in the complaint that weds the placing of software in her name by Belle Brands to detrimental reliance or promissory estoppel. Ms. Ruth also argues she took phone calls from home. But once again, there's nothing in the complaint, and the district court addressed that, that connects the dots between taking calls from home and the alleged promise for the coordinator position. And not only that, but the reliance under the law has to be material, and there's nothing to suggest the taking of the calls from home was some kind of material change in circumstances. The last argument advanced by Ms. Ruth at the lower court is negligent hire, retention, and supervision. It has not been advanced here before the appellate court. We believe it's been waived. Even so, common law negligence claims by an employee against their employer for emotional harm are preempted by the Kentucky Workers' Compact. There's a litany of cases to hold as much. If the court doesn't have any further questions, then I will serve my time and ask that this court uphold the decisions of the lower court. Thank you very much. Thank you. Thank you for the opportunity to be here today, Your Honor. Jurisdiction for this court is always first. KRS 344.280, the retaliation statute, can attach to an individual. We have advanced civil conspiracy claims and promissory estoppel claims. We believe that we can get a judgment against Hiram Horne in his individual capacity, and therefore there has been no diversity of citizenship. This case must be remanded to the district court with instructions sent back to Grayson County Circuit Court so we can begin the process of opening discovery to prove that my client was detrimentally relied upon promises for coordinator position and to advance within the company to do exactly what she had been doing and been demoted for doing. The facts are the facts are the facts. There was a conflict between Tiffany Overstreet. She was a close working friend of Hiram Horne, and Hiram Horne was very angry that she had quit. Ms. Roof was then written up for contrived reasons, for minor reasons, for things that were bogus. That spells out enough facts for us to get a fair-minded jury, and we respectfully request that this case remand pursuant to the law. Thank you. Thank you very much, and the case is submitted.